**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02820-RPM

ESTATE OF JOHN THOMAS ROTZIN, *et al.*,

      Plaintiffs,

v.

ARAPAHOE COUNTY, COLORADO, *et al.*,

      Defendants.

---

**DEFENDANT ARAPAHOE COUNTY'S MOTION TO STRIKE AND/OR DISMISS
PLAINTIFFS' AMENDED COMPLAINT IN WHOLE OR IN PART**

---

      Defendant Arapahoe County ("County") moves the Court pursuant to FED. R. CIV. P. 8(a) and (d), 10(b) and (c), 12(b)(1), (2), (6) and 12(f) to strike and/or dismiss, in whole or in part, Plaintiffs' amended complaint (**ECF No. #15**) as the same pertains to it. As grounds therefore, Defendant states that the amended complaint fails to (i) set forth a short and plain statement, (ii) fails to vest the Court with subject jurisdiction over Arapahoe County, (iii) contains immaterial, impertinent and scandalous matter, and (iv) fails to plausibly set forth claims upon which relief may be granted as to the County. In support, Defendant provides as follows:

**Plaintiffs' Amended Complaint with regard to Defendant Arapahoe County**

      This is an excessive force case that concerns the level of force employed by law enforcement officers from two different agencies, including two deputies from the Arapahoe County Sheriff's Office, Matt Howerton and James Wightman, who responded to the Arapahoe Community Treatment Center ("ACTC") after a 911 call reporting a multi-party fight. Once there

they found an out-of-control and assaultive resident of the facility, John Rotzin. The following pertinent facts taken from the amended complaint frame Plaintiffs' claims against the County.

At approximately 9:00 p.m. on November 20, 2014, John Rotzin, a resident of ACTC with a history of drug and alcohol abuse who was transitioning from the Colorado Department of Corrections, physically attacked two woman visitors in the dayroom by randomly punching each of them in the face. (**ECF Doc. #15** ¶¶ 38, 45-47, 50 & 56.) After attacking the second woman, the woman's husband punched Rotzin in the face knocking him to the floor. (*Id.* at ¶¶ 50-51.) At this time an unspecified number of ACTC residents jumped on Rotzin in an effort to restrain him. (*Id.* at ¶ 51.) As they did so, Rotzin punched one of them in the face. (*Id.*) An ACTC staff person witnessing the altercation called 911. (*Id.* at ¶55.)

After order was somewhat restored to the dayroom but before any police officers arrived, Rotzin again randomly attacked and punched another ACTC resident in a hallway. (*Id.* at ¶ 56.) He then re-entered the dayroom where he was immediately set upon again by several residents and physically restrained. (*Id.* at ¶ 57.) The residents then dragged Rotzin to a doorway in the front hallway to await police. (*Id.*)

Deputy Wightman was the first law enforcement officer to reach the scene. (*Id.* at ¶ 59.) The residents restraining Rotzin identified him as the person who was causing the trouble and stated he was not behaving normally. (*Id.*) Wightman ordered them to let Rotzin go. (*Id.* at ¶ 102.) They did so and Rotzin sat on the floor. (*Id.* at ¶ 60.) Wightman then ordered Rotzin to get up. (*Id.*) He did not comply. (*Id.*) Wightman then again ordered him to stand and eventually he did so, but started back toward the dayroom. (*Id.* at ¶ 61.)  In response, Deputy Wightman grabbed Rotzin by the shirt and slammed him into the wall. (*Id.* at ¶ 62.) Rotzin then started advancing toward

Wightman. Wightman instructed Rotzin to face the wall and keep his hands where he could see them. (*Id.* at ¶ 63.) Before Rotzin could comply, Deputy Wightman allegedly fired his Taser hitting Rotzin in the chest. He fell to the floor. (*Id.* at ¶¶ 64-65.) As Rotzin tried to get up, Deputy Wightman allegedly tased him again—and then a third time. (*Id.* at ¶¶ 66-67.) Shortly thereafter, additional law enforcement officers arrived. It is claimed these officers used excessive force by forcing Rotzin into a prone position and placing their body weight on him, delivering multiple knee strikes to his ribcage, and hitting him in the head with a baton. (*Id.* at ¶¶ 68-69 & 72-75.)

Plaintiffs' complaint continues on in a chaotic fashion reciting stories by various purported witnesses describing the struggle between Rotzin and the officers. (*Id.* at ¶¶ 76-79 & 101-05.) In any event, Plaintiffs' pleading illustrates that Rotzin was eventually handcuffed and strapped into a stretcher for transfer to an ambulance where paramedics administered a sedative to calm him down. (*Id.* at ¶ 87.) Approximately one minute later, Mr. Rotzin stopped breathing and went into cardiac arrest. (*Id.* at ¶ 88.) He never regained consciousness and was pronounced dead in the hospital four days later on November 24. (*Id.* at ¶ 91.)

The cause of Mr. Rotzin's death was determined after a full autopsy to be "complications of excited delirium syndrome." (*See* Exhibit 1, Autopsy Report ACCO#14A-2618, p. 2, appended hereto.) "Other significant conditions included physical struggle with physical, electrical and chemical restraint." (*Id.*)[1]

---

[1] Documents referred to and relied upon by a plaintiff in a complaint may be considered by a court on a motion to dismiss notwithstanding that the plaintiff failed to append the same to their pleading. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (documents referred to in a complaint even though not formally incorporated by reference or attached to it may be considered on motion to dismiss if they are central to the plaintiff's claims). In this instance, Plaintiffs have materially relied upon selected portions of the autopsy to support their claims and establish the cause of Mr. Rotzin's death. (*See* **ECF Doc. #15** ¶¶ 94-95 & 99.) Additionally, a court on a motion to dismiss may also take judicial notice of official records and facts not subject to reasonable dispute because they can be accurately and readily

**Plaintiffs' Claims against Arapahoe County**

Plaintiffs have asserted three claims for relief against Defendant Arapahoe County. The first claim has been brought under 42 U.S.C. § 1983 and the Fourth Amendment and contends that the officers responding to ACTC killed Mr. Rotzin through the use of excessive force and that the County is liable for the same by reason of: (1) it's failure to properly train and supervise Deputies Wightman and Howerton with respect to the use of excessive force and reasonably accommodating disabled persons subject to arrest (**ECF Doc. #15** ¶¶ 93, 149 & 152), and (2) maintaining a custom, policy and practice that encourages, condones, tolerates and ratifies the use of excessive force by its law enforcement officers (*id.* at ¶¶ 148 & 153). Plaintiffs' second and third claims have been brought under Title II of the Americans with Disabilities Act ("ADA") and Rehabilitation Act of 1973 ("Rehab Act") and assert that the County illegally discriminated against Mr. Rotzin by excluding him from government benefits, activities or programs by reason of an alleged handicap, and by failing to supervise and train its deputies on how to accommodate persons with disabilities. (*Id.* at ¶¶ 161, 165, 168, 176 & 178.)

**Plaintiffs' Amended Complaint Fails to Vest the Court**
**with Jurisdiction Over Arapahoe County**

As recognized in Plaintiffs' pleading at Note 1 on Page 3, federal courts within this district, as well as the Tenth Circuit Court of Appeals, have held that a plaintiff's failure to name a county as a party defendant in the statutorily-mandated style specified by COLO. REV. STAT. § 30-11-105 (2016) fails to vest the court with jurisdiction over it. *Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005) ("This statutory provision provides the exclusive method by which jurisdiction

---

determined from sources whose accuracy cannot reasonably be questioned. *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008).

over a county can be obtained," citing *Calahan v. Jefferson County*, 163 Colo. 212, 429 P.2d 301, 302 (1967)). Notwithstanding the command of the statute and clearly established precedent, Plaintiffs elected to ignore both. And since Plaintiffs have brought their claims against Deputies Wightman and Howerton in their individual capacities only, their complaint fails to vest this Court with jurisdiction over Arapahoe County and their claims against it must be dismissed for lack of jurisdiction. *E.g., Sisneros v. County of Pueblo*, No. 09-cv-01646-PAB-MJW, 2010 WL 1782017, at *2 (D. Colo. May 3, 2011) (an action attempted to be brought against a county under any designation other than as set forth in COLO. REV. STAT. § 30-11-105 is a nullity, citing *Calahan*).[2]

**Plaintiffs' Amended Complaint fails to comply with the Federal Rules of Civil Procedure**

As described in the motion to strike and/or dismiss filed by Defendants Wightman and Howerton, FED. R. CIV. P. 8(a)(2) provides that a pleading attempting to state a claim for relief must contain "a short and plain *statement* of the claim showing that the pleader is entitled to relief" (emphasis added). Likewise, Rule 10(c) refers to "written instruments" as permitted exhibits. Under Rule 12(f), a party may move that a court strike any "redundant, immaterial, impertinent, or scandalous matter."

In lieu of repeating the argument and citations previously provided in Defendants Wightman and Howerton's motion demonstrating that the Plaintiffs' pleading has failed to comply with these rules, the County adopts and incorporates Pages 2-6 of the same into this motion pursuant to FED. R. CIV. P. 10(c). *See also* Chas. A Wright, Arthur R. Miller, *et al.*, 5A *Federal*

---

[2] Under COLO. REV. STAT. § 30-11-105 (2016), by bringing an action against "The board of county commissioners of the county of . . . . . . . . ," a plaintiff is, by definition, bringing its action against the county itself, particularly in the absence of allegations or identifications to the contrary in the body of the complaint illustrating that the action is actually being brought against the county's board of commissioners or one or more of its individual member commissioners.

*Practice & Civil Procedure* § 1326 (3rd ed. 2016) (Oct. update). Consistent with that previously cited authority, the particular allegations targeted therein, including all photos, should be stricken from Plaintiffs' amended complaint.

**Plaintiffs fail to set forth a Plausible Claim for Handicap Discrimination**

Plaintiffs' claim that the County (and simultaneously the City of Sheridan) discriminated against Mr. Rotzin in violation of the provisions of the ADA and Rehab Act in regard to the manner in which he was arrested. More specifically, Plaintiffs assert that the County, through Deputies Wightman and Howerton, failed to accommodate undefined needs Mr. Rotzin had related to his "depression" and "mental illness," the onset of which apparently resulted from the emotional trauma he suffered from the loss of his brother in or about 2012 after which he slid into drug and alcohol abuse. (**ECF Doc. #15** ¶¶ 1 & 37-38.) Plaintiffs attribute Mr. Rotzin's physical attacks on the several persons at ACTC on November 20, 2014 to a "serious mental health episode." (*Id.* at ¶¶ 44-45, 47, 49 & 51.) According to Plaintiffs, the County and City of Sheridan failed to accommodate Mr. Rotzin's "anxiety, depression, and delusions" during the course of their respective officers getting him under control and arresting him, and that by doing so the County and Sheridan excluded him from participation in, and denied him the benefits of, services and programs otherwise provided to non-handicapped citizens. (*Id.* at ¶¶ 161 & 176.)

Because the ADA and Rehab Act provide for the same remedies, procedures and rights, claims brought under both statutes are analyzed together. *Sudac v. Hoang*, 378 F. Supp. 2d 1298, 1303 (D. Kan. 2005) (estate of citizen fatally shot by police asserting claims under ADA and Rehab Act to be analyzed together) (citations omitted).

In order to set forth a viable claim under either the ADA or Rehab Act, a plaintiff must

plausibly allege that: (1) he or she is a qualified individual with a disability; (2) that he or she was either excluded from participation in or denied benefits of a public entity's services, programs, or activities, or the public entity otherwise discriminated against the plaintiff; and (3) that such exclusion or denial of benefits or discrimination was by reason of the plaintiff's disability. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).

The Tenth Circuit has not yet recognized the viability of a claim based on the ADA or Rehab Act for failure to accommodate a disability in the course of making an arrest. *Sperry v. Maes*, 592 F. App'x 688, 697 (10th Cir. 2014). Nonetheless, two theories have been examined in the past. First, that a police officer wrongly arrested someone with a disability because they misperceived the effects of a disability as criminal activity; and second, where police having properly arrested a disabled person failed to reasonably accommodate the person's disability in the course of the investigation or arrest causing that person to suffer greater injury or indignity in that process than non-disabled persons. *Id.* (citing *Gohier*, 186 F.3d at 1220-21).

While Plaintiffs' amended complaint seems to assert liability against the County under the failure to accommodate theory, it makes no difference since it fails to set out a plausible claim under either one even assuming that the amended complaint adequately demonstrates that Mr. Rotzin qualified as a disabled person under the law.[3]

---

[3] Plaintiffs do not allege that Mr. Rotzin was ever diagnosed with any type of mental illness. Instead, they claim he became "distraught" after his brother's death in 2012, that he "struggled with depression and other (undefined) mental health issues," and that he started to self-medicate with drugs and alcohol. (**ECF Doc. #15 ¶¶** 36-38.) However, depression and anxiety are not *per se* qualifying disabilities or impairments under the ADA. *E.g.*, *Russell v. Phillips 66 Co.*, 184 F. Supp. 3d 1258, 1268 (N.D. Okla. 2016). And while Plaintiffs also claim Mr. Rotzin had a "record of a disability" and/or was regarded by the County and City of Sheridan as having a disability (*id.* at ¶¶ 158 &172), they do not plead any facts establishing that record or how the County and City of Sheridan perceived or regarded Mr. Rotzin as being disabled. In sum, Plaintiffs' allegations that Mr. Rotzin suffered from a qualifying disability under the ADA or Rehab Act are simply conclusory and formulaic.

"For the wrongful arrest theory to apply, the conduct that is mistaken for criminal activity must actually be lawful." *Sperry v. Maes*, No. 10-cv-03171-RPM, 2013 WL 3465784, at *5 (D. Colo. July 10, 2013), *aff'd*, 592 F. App'x 688 (10th Cir. 2014). In this instance, there are no well-pleaded facts in Plaintiffs' amended complaint that reasonably demonstrate or infer that Mr. Rotzin was taken into custody for legal conduct. To the contrary, and as made plain in the amended complaint, he was taken into custody for his multiple attacks on other persons within the ACTC facility and for his resisting Deputy Wightman's reasonable commands in attempting to effectuate his arrest after being freed by the other ACTC residents who had to forcibly restrain him until Wightman's arrival on the scene. These pleaded facts foreclose Plaintiffs' handicap discrimination claim under the wrongful or mistaken arrest theory. *J.H. ex rel. J.P. v. Bernalillo Cnty.*, 806 F.3d 1225, 1261 (10th Cir. 2015) (alleged disabled person was arrested for battery, not due to her disability).

Likewise, Plaintiffs' discrimination claim based on a failure to accommodate also fails. This is so because (1) the Tenth Circuit has yet to find that a reasonable accommodation claim can be asserted for a failure to do so during an arrest, *Smith v. Howell*, No. CIV-14-1374-HE, 2016 WL 1569850, at *4-5 (W.D. Kan. Mar. 3, 2016) (citing *Gohier*), *aff'd and adopted,* 2016 WL 1532258 (Apr. 15, 2016); and (2) Plaintiffs' pleading does not set forth facts demonstrating or reasonably inferring that Deputies Wightman or Howerton had any knowledge that Mr. Rotzin was disabled or that he needed, by request or otherwise, a reasonable accommodation. *J.H. ex rel. J.P.*, 806 F.3d at 1261 ("If a police officer incurs a duty to reasonably accommodate a person's disability during an arrest, this duty would have arisen if [the officer] had known that the [arrestee] needed an accommodation."); *Sperry*, 2013 WL 3465784, at *6 (failure to accommodate claim

fails in absence of facts demonstrating arresting officer's awareness of arrestee's alleged mental deficiencies); *see also Haberle v. Troxell*, No. 15-cv-02804, 2016 WL 1241938, at *11 (E.D. Pa. Mar. 20, 2016) (noting in dismissing plaintiff's complaint that law enforcement personnel conducting in-the-field investigations already face the "onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations" and "requiring officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstance and prior to securing the safety of themselves, other officers, and nearby citizens, would pose an unnecessary risk to innocents.") (quoting *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000)).[4]

Because there was probable cause to conclude that Mr. Rotzin was engaged in criminal activity at the time of his arrest and was in fact engaged in criminal activity at that time, and given a lack of any well-pleaded allegations illustrating that Deputies Wightman and Howerton were aware that he may have been disabled or needed some unspecified accommodation, there could be no violation of Mr. Rotzin's rights under either the ADA or Rehab Act. Hence, Plaintiffs' claims for disability discrimination fail as a matter of law and must be dismissed with prejudice.

### Plaintiffs' *Monell* Claims Fail

Plaintiffs assert that the death of Mr. Rotzin was caused by the County's failure to properly

---

[4] Remarkably, Plaintiffs newly assert "upon information and belief" in their amended complaint at ¶ 58 that "the call to 911 described Mr. Rotzin as having suffered a severe mental health episode related to his numerous disabilities and each officer knew of should have known that the erratic behavior that led officials at ACTC to call for emergency assistance was a manifestation of Mr. Rotzin's numerous disabilities." However, Plaintiffs' attorneys were provided the audio tape of the entirety of the 911 call, along with the CAD notes and audio tape reflecting the radio traffic between the ACSO dispatcher and the responding officers, on *April 7, 2015*. That tape unequivocally shows that the 911 call from ACTC reported a "large fight" involving "four males" with no mention whatsoever of any person, much less Mr. Rotzin, having suffered any "mental health episode." *See* Exhibit 2 appended hereto (filed conventionally with the Court).

train and supervise Deputies Wightman and Howerton "to avoid the use of excessive force and to reasonably accommodate (and not discriminate against) disabled persons." (**ECF Doc. #15** ¶ 149 & 165-68.)

No matter how fashioned, a local governmental entity cannot be held liable in a suit brought under § 1983 for the conduct of its employees or agents on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S 658, 691 (1978). In order to make out a viable claim, a plaintiff must first identify a constitutional or statutory violation committed by an officer or employee of the entity, and then directly connect that violation to an official policy, decision or custom. *Id.* at 694. As recognized by the Tenth Circuit, a plaintiff must also show that the policy, decision or custom that directly led to the violation was enacted, undertaken or maintained "with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F. 3d 760, 770 (referencing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).

A plaintiff may establish the existence of an official policy or custom through (i) a formally promulgated law, policy or regulation, (ii) an informal but well-settled practice, (iii) a final decision by an official with policymaking authority, (iv) ratification of the conduct or decision-making of subordinate officers or officials—and the bases therefore—by policymaking officials, or (v) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Bryson v. City of Okla. City*, 627 F. 3d 784, 788 (10th Cir. 2010) (quotation marks and citation omitted).

Liability against a government entity for a deprivation of a constitutional right is "at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61

(2011) (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006) (claims of failure to train and supervise against a government entity are so similar that they are treated and analyzed the same way). At a minimum, and as noted above, a plaintiff must demonstrate that an alleged policy of failing to train or supervise was undertaken with deliberate indifference. "Deliberate indifference" is a stringent standard of fault requiring proof that a government entity or actor disregarded a known or obvious consequence of its action and normally necessitates showing a pattern of similar constitutional violations by untrained employees. *Connick*, 563 U.S. at 61-62 (citing *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. Lastly, deliberate indifference in this context is to be evaluated solely from an objective standpoint. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

The Tenth Circuit has never recognized a failure-to-train claim under the ADA. *J. V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1297 (10th Cir. 2016). Nonetheless, and as demonstrated above, Plaintiffs have not pled facts that plausibly implicate a violation of Mr. Rotzin's rights under the ADA or Rehab Act. Consequently, their assertions that Arapahoe County failed to properly train or supervise Deputies Wightman or Howerton falls. *J.H. ex rel. J.P.*, 806 F.3d at 1262. Likewise, there are no well-pled, non-conclusory facts illustrating or reasonably inferring deliberate indifference by any County employee, including any employee with policy-making authority, to known or obvious risks of constitutional injury emanating from training or supervision failures. Nor does Plaintiffs' complaint show or infer any past pattern of constitutional

violations of the type Plaintiffs claim Mr. Rotzin was subjected to. Plaintiffs have also not made any effort to define or distinguish the alleged training and/or supervision deficiencies allegedly committed by the County from those committed by the City of Sheridan and how the deficiencies attributable to the County may have caused a violation of Mr. Rotzin's rights as opposed to any alleged deficiencies attributable to the City of Sheridan. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (plaintiff is obligated to demonstrate who is alleged to have done what to whom).

Also, the only factual support offered in Plaintiffs' complaint to demonstrate the alleged failure to train or supervise is the single event involving Mr. Rotzin. This is not sufficient to make out a viable claim of deliberate indifference or illustrate a causal link between any alleged failure to train and supervise and the purported constitutional violations claimed by Plaintiffs. *See Sperry*, 592 F. App'x at 698 (lack of reasonable notice of similar instances precludes notice of any training or supervision deficiencies and corresponding deliberate indifference); *Barber v. Town of La Veta*, No. 14-cv-03273-RBJ, 2015 WL 5865105, at *4 (D. Colo. Oct. 8, 2015) (Rule 12(b)(6) dismissal citing *Connick*, 563 U.S. at 62); *Thomas v. Mayor for City & Cnty. of Denver*, No. 15-cv-00906-MEH, 2015 WL 4550407, at *5 and *6 (D. Colo. July 29, 2015) (plaintiff "cannot state a claim for relief under § 1983 by pointing to isolated incidents," citing *Ketchum v. Denver Police Dep't*, 930 F.2d 33, 33 (10th Cir. 1991) (table) (citing *Monell*, 436 U.S. at 694)); *McAllister v. Kellogg*, No. 13-cv-2896-CMA-MJW, 2015 WL 2329425, at *10 (D. Colo. May 14, 2015) (Rule 12(b)(6) dismissal citing *Canton*, 489 U.S. at 390-391 (1989)).

Additionally, Plaintiffs' amended complaint does not supply non-conclusory factual allegations illustrating how any purported deficient training or supervision was, in fact, deficient,

who purportedly failed to provide it and/or when, and how any such deficiency caused a violation of Mr. Rotzin's rights. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (plaintiff must identify specific deficiency that was obvious and closely related to the asserted injury). Consequently, Plaintiffs' failure to train or supervise claims fail for these reasons as well. *Barber*, at *3 (failure to offer specific facts regarding deficient training warrants dismissal of complaint); *Hill v. Unnamed Arapahoe Cnty. Detention Officers*, No. 11-cv-00835-PAB-KMT, 2021 WL 899278, at *7 (D. Colo. Mar. 15, 2012) (same); *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012) (same).

In sum, Plaintiffs' failure to train and/or supervise claims reflect nothing more than a formulaic recitation of the elements of a claim, and this is insufficient to establish a viable claim under *Monell*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5]

### Conclusion

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And although a court is to construe well-pleaded facts as true, not all factual allegations are entitled to the assumption of truth. (*Id.*) "[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Also to be disregarded are

---

[5] Plaintiffs have also in passing thrown in a catchall claim that both the County and Sheridan have customs, policies and practices encouraging, condoning, tolerating and ratifying uses of excessive force by their respective officers based on the single incident involving Mr. Rotzin. (**ECF Doc. #15** ¶148.) To the extent this catchall allegation warrants a response, it simply need only be said that these claims are subject to dismissal for the same reasons as Plaintiffs' failure to train/supervise claim.

allegations that amount to nothing more than a formulaic recitation of the elements of a claim. *Iqbal*, 556 U.S. at 678.

Plaintiffs' amended complaint fails to vest this Court with jurisdiction over the County and, moreover, fails to comply with the Federal Rules of Civil Procedure by improperly containing embedded photographs and immaterial, impertinent, redundant and scandalous allegations. Additionally, it is fundamentally constructed upon conclusory and formulaic allegations and, hence, fails to set forth viable claims. Wherefore, Defendant Arapahoe County prays that it be dismissed in its entirety with prejudice.

Respectfully submitted this 13th day of March 2017.

**Arapahoe County Attorney's Office**

By:   *s/ Edward M. Caswall*
Edward M. Caswall
Deputy County Attorney
Erin L. Powers
Assistant County Attorney
5334 South Prince Street
Littleton, CO 80120
Tele: 303-795-4639
Email: ecaswall@arapahoegov.com
         epowers@arapahoegov.com

**Counsel for Defendant Arapahoe County**

**Certificate of Service**

This is to certify that on the 13th day of March 2017, I electronically filed the foregoing **DEFENDANT ARAPAHOE COUNTY'S MOTION TO STRIKE AND/OR DISMISS PLAINTIFFS' AMENDED COMPLAINT IN WHOLE OR IN PART** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

Darold W. Killmer
dkillmer@kln-law.com

Mari Newman

mnewman@kln-law.com

Andy McNulty
amcnulty@kln-law.com

Eric M. Ziporin
eziporin@sgrllc.com

Rachael M. Wachs
rwachs@sgrllc/com

*s/ Stacy Hines*

Stacy Hines, Paralegal
Arapahoe County Attorney's Office

15